**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JOHN W. MOBLEY,** | ) | **CASE NO. 3:10CV1064** |
| | ) | |
| **Petitioner,** | ) | **JUDGE JOHN R. ADAMS** |
| | ) | |
| **v.** | ) | **MAGISTRATE JUDGE GREG WHITE** |
| | ) | |
| **STUART HUDSON, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | **REPORT AND RECOMMENDATION** |

Petitioner, John W. Mobley ("Mobley"), *pro se*, challenges the constitutionality of his conviction in the case of *State v. Mobley*, Paulding County Court of Common Pleas Case No. CR08-555.  Mobley filed his Petition for a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on May 11, 2010.  On November 9, 2010, Warden Stuart Hudson ("Respondent") filed a Motion to Dismiss (Doc. No. 8), which the Court denied on May 9, 2011, instead ordering a stay allowing Mobley to address unexhausted state remedies.  (Doc. No. 11.)  The Court found that ground one, a sufficiency of evidence claim, was unexhausted as Mobley had not appealed the issue to the Ohio Supreme Court.  (Doc. No. 11 at 8.)  Ground five, regarding ineffective assistance of trial counsel, was also found to be partially unexhausted.[1]  *Id*. at 9-10.  On March 22, 2012, after Mobley notified the Court of exhaustion, the stay was lifted.  (Doc. Nos. 16 & 17.)  Respondent filed a Return of Writ on April 19, 2012.  (Doc. No. 18.)  Mobley filed a Traverse on May 29, 2012.  (Doc. No. 20.)  For reasons set forth in detail below, it is recommended that Mobley's Petition be denied.

### I.  Summary of Facts

---

[1]In ground five, Mobley raised both ineffective assistance of trial and appellate counsel. The Court found that the appellate counsel ineffectiveness claim was exhausted as Mobley had properly raised it under Ohio R. 26(B).  *Id*. at 9.

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002). The state appellate court summarized the facts underlying Mobley's conviction as follows:

{¶ 3} In December 2008, the case proceeded to trial, at which the following testimony was heard.

{¶ 4} Deputy Mark Butler of the Paulding County Sheriff's Office testified that he received training in methamphetamine including its ingredients and method of production; that methamphetamine is a "Schedule II" drug according to the Ohio Revised Code; that a clandestine methamphetamine laboratory (hereinafter "meth lab") is a secret laboratory used to produce illegal drugs, specifically, methamphetamine; and, that one method of methamphetamine production requires solvent (such as Coleman fuel), lithium (from stripped lithium batteries), pseudoephedrine tablets, oxidizers, acid (such as drain opener), coffee filters, anhydrous ammonia, a heat source to evaporate the mixture, work gloves to handle the anhydrous ammonia to prevent burns, and a reaction vessel where everything is mixed together.

{¶ 5} Deputy Butler continued that, on May 6, 2008, he executed a search warrant at John Mobley's residence at 17572 County Road 156 in Paulding, Paulding County (hereinafter "the residence"); that Elizabeth Brown was at the residence when he arrived to execute the warrant; that the nature of the search warrant was to look for methamphetamine and items used to produce it; that he and several other officers located a meth lab in the basement of the residence; that, in the residence basement, he located a reaction vessel, propane torch, drain opener, a ventilation fan, lithium batteries, a stove filled with burnt lithium batteries, glass tubing, and a laundry basket full of gloves; that, outside of the residence, he located another pile of gloves and multiple burned Coleman fuel cans; that, in the residence office, he located a scale and a blue bag containing coffee filters, green vegetative material, and a white powdery substance in plastic baggies, and instruments used for snorting or smoking drugs, including a box cutter, burnt foils, corroded spoons, a pipe, rolling papers, a mirror, and a tray with white residue; and, that, in the residence dining room, he located a stove containing many empty pseudoephedrine boxes. Deputy Butler further testified that lithium batteries can be used in infrared "night vision" glasses; that he ordered the solvents and oxidizers to be disposed of as hazardous materials without being tested because the Bureau of Criminal Identification and Investigation (hereinafter "B.C.I.") will not take hazardous materials; and, that the gloves were not tested for the presence of anhydrous ammonia.

{¶ 6} Detective Michael Freeman of the Van Wert City Police Department testified that he received training in clandestine lab safety; that, on May 6, 2008, he assisted the Paulding County Police Department with investigating a meth lab in Paulding County; that the officers located packages of pseudoephedrine in a camper parked in the driveway of the residence; located foils and other smoking devices; and, located empty pseudoephedrine boxes inside a wood burning stove.

{¶ 7} Agent Gary Miller of B.C.I. testified that, on May 6, 2008, he assisted the Paulding County Sheriff's Office with investigating a meth lab in Paulding County; that, in the basement of the residence, they located evidence of a former

or current meth lab, including stripped lithium batteries, a propane torch, starter fluid, gloves, a cooking pan, drain opener, bleach, a pan covered in a blue substance, which is indicative of anhydrous ammonia being cooked, and a coffee grinder with unground pseudoephedrine pills and white powder on the inside of the grinder; and, that all of the ingredients required to produce methamphetamine were present in the residence, with the exception of anhydrous ammonia.

{¶ 8} Scott Dobransky, a forensic scientist at B.C.I., testified that he examined the zippered bag containing the white substance and identified it as methamphetamine.

{¶ 9} Detective Joel Gibson of the Henry County Sheriff's Department testified that, on May 6, 2008, at approximately 3:30 a.m ., he investigated a report by Stanley Elevator of an anhydrous ammonia theft in progress at their fertilizer plant; that he located a suspicious vehicle and determined that it was registered to Mobley; that, following a canine search, he located Mobley lying in a field near the crime scene; and, that he also apprehended an individual named Robert Gibson.

{¶ 10} Elizabeth Brown testified that she and Mobley lived together as boyfriend and girlfriend at the residence from 2004 until June 2008; that no one else lived at the residence; that, during 2008, Mobley gave her money to purchase pseudoephedrine approximately four or five times per month; that she would purchase it, give it to him, and he would "disappear for awhile" and then "come back with product" (trial tr., vol. I, p. 225); that she had access to the basement of the residence while living there, but never manufactured methamphetamine herself; that, when she did laundry in the basement, she often saw jars, drain opener, empty pill boxes, and batteries; that she occasionally conversed with Mobley about methamphetamine production, and he would tell her about things he needed to purchase to produce it, such as drain opener and pills; that she was using methamphetamine while living with Mobley; that, when she purchased pills for Mobley, he would give her half of the methamphetamine he produced, which he weighed on a scale in the residence office; that she had seen Mobley squeeze a substance out of a filter and leave it to dry in a glass tray, which he would scrape off with a box cutter; that Mobley used fabric softener, candles, and incense to cover the smell of the anhydrous ammonia cooking; and, that Mobley would procure anhydrous ammonia approximately once a month.

{¶ 11} On cross-examination, Brown testified that, when Deputy Butler first approached her, she told him that she did not know anything about a meth lab in the basement; that, after she was charged with offenses herself relating to the meth lab, she decided to testify against Mobley in exchange for a "deal"; that, at the time she was living with Mobley, she was addicted to methamphetamine and used it approximately three or four times a day; and, that she did not believe her former methamphetamine use had tainted her ability to recollect during that time.

{¶ 12} After Brown testified, the State rested. Mobley's counsel then moved for acquittal on all counts pursuant to Crim.R. 29, which the trial court denied. Thereafter, Mobley presented the following testimony in his defense.

{¶ 13} Kenneth Knapp testified that he and Mobley were friends for approximately thirty-five years; that, prior to his arrest, Mobley did "salvage" or "scrapping metal" to make an income ( Id. at p. 259); that he had seen Robert Gibson, an acquaintance of Mobley, at Mobley's residence on multiple occasions; that, to his knowledge, Gibson did not live at the residence; that Gibson

occasionally went into Mobley's residence when Mobley was not there; that he had been in Mobley's basement; that Gibson asked him on one occasion if he would go with him to get anhydrous ammonia, but Mobley never asked him to do this. Knapp continued that he had been convicted of felonies for trafficking in marijuana and breaking and entering; and, that, when he was in Mobley's basement, he never saw the items associated with methamphetamine production.

{¶ 14} Jennifer Thomas testified that she was Mobley's sister, and she lived part-time at the residence in May 2008; that only she, Mobley, and Brown lived at the residence during that time; that she had been in the basement of the residence to do laundry, but never saw any of the items associated with methamphetamine production; that she had never seen Mobley ingest methamphetamine; that Gibson was at the residence "all the time" and came and went as he pleased ( Id. at p. 283); and, that Gibson often borrowed Mobley's truck. Thomas continued that she had been convicted of child endangerment because her husband "got busted for dealing" and her name was on the lease ( Id. at 286); that the pictures of gloves entered into evidence were Mobley's "working gloves" ( Id. at 293); and, that she was "somewhat" aware that Brown was addicted to methamphetamine, but had only seen her use it in Gibson's trailer, and not at the Mobley residence.

{¶ 15} Mobley testified that he "junks" for a living, or collects scraps; that the pictures entered into evidence depicting items associated with methamphetamine production were not set up as depicted on May 6, 2008; that he was in the residence basement often to burn firewood, do laundry, and turn on the fuses; that, on May 6, 2008, when he was arrested for theft of anhydrous ammonia, Brown dropped him off outside a grain elevator in Henry County because Gibson had called him and told him that his truck had broken down and he needed to pick it up; that law enforcement officers came out with a canine unit after he arrived, so he ran and hid in a field; and, that Gibson came to his residence frequently, even when he was not there.

{¶ 16} Mobley further testified that he used the laundry detergent and bleach to do laundry; that he used the lithium batteries for his infrared hunting glasses; that he was aware Brown was addicted to methamphetamine and she used it three or four times per day; that he had previously been convicted of felony domestic violence against his ex-wife and marijuana trafficking; that he had never produced methamphetamine or stolen anhydrous ammonia; and, that he did not know how the items associated with methamphetamine production got into his basement, but hypothesized that Gibson may have had something to do with it because he was frequently in the residence.

{¶ 17} On cross-examination, Mobley testified that, although he "junked" for a living, he had not filed a tax return or paid taxes in approximately ten years; that, in 2001, he pleaded guilty to felony possession of methamphetamine in Defiance County; that he had nothing to do with hooking up the propane tank to fill it with anhydrous ammonia in Henry County; that the residence office was his office, but that he was not familiar with the scale; that the glassware items and bowls were antiques he had collected; that he was not familiar with the aluminum foil and smoking and snorting devices inside the bowls; that he was not familiar with the fan in his basement window; that he used the propane tank to spray paint cars, which he also did for a living; that the blue bag found in his office containing foil belonged to Gibson; that he kept drain cleaner in the basement to unplug the dryer vent; that he had never burned batteries in his wood stove, and did not know how they got there; that the glassware found in the basement was used for milking cows, and he did not know why it was in the basement; that he did not know how

4

the pseudoephedrine boxes got into the stove; that he used the propane torch to start fires in the stove because it was easier than using a lighter; that he used the starter fluid to start vehicles; and, that he did not know how a coffee grinder got into his residence because he did not drink coffee.

{¶ 18} Brown returned to the stand and testified that, in the early morning of May 6, 2008, Gibson and Mobley left together to pick up anhydrous ammonia; that the coffee grinder containing pills, pan covered with a blue substance, blue bag containing filters, cooking pan, pseudoephedrine boxes, and scale were all in the residence and in Mobley's possession prior to execution of the search warrant; and, that Thomas, Knapp, and Mobley had all smoked methamphetamine in her presence.

*State v. Mobley,* 2009 WL 3260613, *1-4, 2009-Ohio-5434 (Ohio App. 3rd Dist., Oct. 13, 2009).

## II. Procedural History

### A. Conviction

On June 13, 2008, a Paulding County Grand Jury charged Mobley with one count of illegally manufacturing drugs in violation of Ohio Revised Code ("O.R.C.") § 2925.04(A), one count of illegal assembly or possession of chemicals for the manufacture of drugs in violation of O.R.C. §2925.041(A), and one count of possession of drugs in violation of O.R.C. § 2925.11(A)(1)(C)(1)(a).  (Doc. No. 8-1, Exh. 2.)  On December 11, 2008, a jury found Mobley guilty as charged.  *Id.*, Exh. 4.  Prior to sentencing, the court ruled that the illegal manufacture of drugs and the illegal assembly or possession of chemicals for the manufacture of drugs were allied offenses of similar import.  *Id.*, Exh. 6.  The State elected to have Mobley sentenced for illegally manufacturing drugs.  *Id.*  On January 5, 2009, Mobley was sentenced to an aggregate prison term of five years.  *Id.*

### B. Direct Appeal

On February 3, 2009, Mobley, through trial counsel, filed a Notice of Appeal with the Court of Appeals for the Third Appellate District ("state appellate court") raising three assignments of error:

1.      The trial court's verdict that defendant was guilty of illegal manufacture of drugs, illegal assembly or possession of chemicals for the manufacture of drugs, and possession of drugs is against the manifest weight of evidence.

2.      Appellee's evidence was legally insufficient to support the verdict of the trial court.

3.      The verdict forms and the resulting entry were insufficient under O.R.C. 2945.75

5

to support appellant's convictions and sentences for counts I and II of the indictment.

(Doc. No. 8, Exhs. 7, 8.)  On October 13, 2009, Mobley's conviction was affirmed.  *Id.*, Exhs. 10, 11.

On August 16, 2011, Mobley filed a delayed direct appeal with the Ohio Supreme Court raising an insufficiency of evidence argument.[2]  (Doc. No. 18-1, Exhs. 23 & 24.)  He asserted that the basis for the delay was because he was not informed by counsel or the state appellate court of the October 13, 2009 decision, and that he is "semi-literate," and ignorant of the law and legal procedures.  *Id.*, Exh. 24.  The motion was denied on October 5, 2011.  *Id.*, Exh. 25.

### C. Application for Reconsideration and Reopening

On January 7, 2010, Mobley, *pro se*, filed an Application for Reconsideration and Reopening of the Direct Appeal pursuant to Ohio App. R. 14(B), 26(A) and 26(B) asserting four assignments of error:

1.  Appellate counsel's failure to serve notice to Appellant.

2.  Appellate counsel on direct appeal was ineffective for failing to file an application for reconsideration of the appellate court judgment within the statutory ten day time period.

3.  Appellate counsel on direct appeal, violated the defendant's 6th and 14th amendment rights, to the effective assistance of counsel, which deprived the defendant/appellant of his right to the effective assistance of counsel on direct appeal, where appellate counsel represented conflicts of interests.

4.  Appellate counsel on direct appeal was ineffective, which prejudicially violated the appellant's rights at trial, as a result of the fact that defense counsel (also appellate counsel), filed a motion to "withdraw" a motion that attack [sic] the validity of search warrant.  Thus counsel was ineffective at trial, as well as on direct appeal, as a result of counsel's motion moving to withdraw his motion to "suppress evidence" obtained during illegal search.

(Doc. No. 8, Exh. 12.)  On January 25, 2010, Mobley's application was denied under App. R. 26(A) as untimely, and under App. R. 26(B) for failing to show "any genuine issue as to whether [he] was deprived of the effective assistance of counsel on appeal."  *Id.*, Exh. 14.

On February 19, 2010, Mobley, *pro se*, filed a timely Notice of Appeal with the Ohio

---

[2]Mobley filed the delayed direct appeal during this Court's stay and abeyance.

6

Supreme Court raising four propositions of law:

1.    Appellant's 6th and 14th Amendment right to the effective assistance of counsel on direct appeal, was violated, as a result of appellate counsel's failure to notify appellant that the court of appeals had overruled and denied his assignments of errors on direct appeal.

2.    Appellate counsel on direct appeal was ineffective for failing to file an application for reconsideration of the appellate court judgment within the statutory ten day time period.

3.    Appellate counsel on direct appeal violated the defendant's 6th and 14th amendment rights, to the effective assistance of counsel, which deprived the defendant/appellant of his right to the effective assistance of counsel, on direct appeal, where appellate counsel represented conflicts of interests.

4.    Appellate counsel on direct appeal was ineffective, which prejudicially violated the appellant's rights at trial, as result of the fact that defense counsel (also appellate counsel), filed a motion to "withdraw" a motion that attack [sic] the valildity of search warrant.  Thus, counsel was ineffective at trial, as well as on direct appeal, as a result of counsel's motion moving to withdraw his motion to "suppress evidence" obtained during illegal search.

(Doc. No. 8, Exhs. 15, 16.)  On May 5, 2010, the appeal was dismissed as not involving any substantial constitutional question.  *Id.*, Exh. 17.

### D.    Delayed Post-Conviction Relief

On December 2, 2010, Mobley filed a motion for delayed post-conviction relief with the trial court arguing that his counsel was ineffective for withdrawing a motion to suppress.[3]  (Doc. No. 12-1.)  As reasons for the delay, he asserted that appellate counsel had assured him that the matter would be presented on direct appeal, but subsequently failed to provide him with a copy of the brief or the court's decision.  *Id.* at p. 4.  On December 21, 2010, the court denied the motion for delayed post-conviction, determining that Mobley's intimation that he learned of the October 2009 decision well-after the 180-day deadline, was belied by the fact that Mobley filed a January 7, 2010 motion for reconsideration of that decision.  (Doc. No. 12-7.)  The court, after reviewing an audio tape recording of the suppression hearing held on August 26, 2008, determined that "Defendant's counsel, in open court and in the presence of the Defendant, orally

---

[3]The Court notes that the documents pertaining to Mobley's delayed post-conviction were not included in the record provided by Respondent.  After the stay was ordered, Mobley filed them on June 10, 2011 in a motion to supplement.  (Doc. No. 12.)

moved to withdraw his previously filed Motion to Suppress evidence and that the Court addressed the Defendant directly and asked the Defendant if it was satisfactory to the Defendant to withdraw said motion and the Defendant responded in the affirmative." *Id.*

On August 16, 2011, Mobley filed a motion for delayed appeal with the state appellate court raising the issue of trial counsel's ineffectiveness regarding the suppression motion.  But because he failed to file "concurrently" a notice of appeal as required by Ohio App. R. 5(A), the motion was denied.  (Doc. No. 18-1, Exhs. 26 & 27.)  On September 19, 2011, he filed a motion for reconsideration, which the court denied on November 29, 2011, explaining that "[t]he requirement that a notice of appeal be filed concurrently with the motion for a delayed appeal is jurisdictional in nature, not a 'technical' defect."  *Id.*, Exhs. 28 & 29.

On December 16, 2011, Mobley filed an appeal to the Ohio Supreme Court again raising the issue of trial counsel's ineffectiveness regarding the suppression motion.  *Id.* at. Exh. 30.  On March 7, 2012, the appeal was dismissed as not involving any substantial constitutional question. *Id.* at Exh. 33.

### E.      Federal Habeas Petition

On May 11, 2010, Mobley filed a Petition for Writ of Habeas Corpus, asserting the following grounds for relief:

> **GROUND ONE**: Petitioner's 14th Amendment due process rights were violated, resulting from the State's failure to prove his guilt by proof beyond a reasonable doubt.
>
> **Supporting Facts**: Petitioner was charged with one count of illegal manufacturing in drugs, a felony of the second degree (R.C. 2925.04(A)); and one count of illegal assembly, also a felony of the second degree (2925.11(A)(1)(C)(1)(a)).  At trial, the state failed to prove all of the essential elements needed for a conviction.  Thus, Petitioner's conviction(s) are based on insufficient evidence.
>
> **GROUND TWO**: Petitioner's appellate attorney on direct appeal, was ineffective for not notifying the petitioner/appellant, that the appellate [court] denied his appeal.
>
> **Supporting Facts**: On October 13, 2009, the Third District Court of Appeals decided my direct appeals claim, i.e, three assignments of errors were raised on direct appeal.  However, my appellate attorney (Joseph A. Benavidez), did not notify me that my appeal had been decided, which prevented me from filing a timely appeal with the Supreme Court of Ohio.  Thus, my 6th and 14th Amendment rights were violated.

8

**GROUND THREE**: Petitioner was denied of his 6th and 14th Amendment rights to the effective assistance of appellate counsel on direct appeal.

**Supporting Facts**: In addition to the fact that appellate counsel failed to notify the petitioner of the appellate court's decision, denying the errors raised on direct appeal; appellate counsel was ineffective as a result of appellate counsel's failure to file a motion for reconsideration, pursuant to Ohio App. R. 26(A).

**GROUND FOUR**: Petitioner's 6th and 14th Amendment rights to effective assistance of counsel at trial, and on direct appeal, was violated, as a result of conflict of interest.

**Supporting Facts**: Petitioner was represented by an attorney named: Joseph A. Benavidez, at trial.  This same attorney represented Petitioner on direct appeal.  As a result of the lawyer's dual representation, deprived appellant of his 6th and 14th Amendment rights to the effective assistance of counsel.  And prevented the appellant from raising ineffective assistance of counsel claims on direct appeal, conflict of interest.

**GROUND FIVE:** Petitioner was deprived of his right to the effective assistance of counsel at trial, and on direct appeal, resulting from trial counsel's actions, "withdrawing" petitioner's motion to suppress evidence, which violated the Petitioner's right to be free from illegal searches and seizures, and of his right to the effective assistance of counsel at trial; and, thus due to the fact that appellate counsel, was the same attorney that represented the Petitioner at trial and on direct appeal, violated the Petitioner's right to effective assistance of counsel on direct appeal, from being able to raise this claim on direct appeal.

**Supporting Facts**: Trial counsel was instructed, by the Petitioner, to file a pretrial motion to suppress evidence on grounds that the search warrant as issued: (a) contained knowingly false statements in violation of *Franks v. Delaware*; and (b) the police lacked sufficient probable cause.  The magistrate issued a search warrant on a bare bone affidavit in violation of *Illinois v. Gates*, which violated the Fourth Amendment.  Defense counsel withdrew the motion without the consent or advice from the Petitioner.  Thus, Petitioner's right to the effective assistance of counsel was violated under *Kimmelman v. Morrison*, in violation of the 6th Amendment.  Additionally, the Petitioner was unaware that the motion to suppress evidence was even "withdrawn."  It wasn't until after the trial began that the Petitioner became cognizable of the fact that the search warrant was withdrawn.  Trial counsel was the same attorney that represented the Petitioner on direct appeal.  Thus, the Petitioner's 6th Amendment right to effective appellate counsel was violated, resulting from this apparent conflict.

**GROUND SIX**: Petitioner's sentence is void, in violation of the Due Process Clause and existing Ohio Supreme Court case law; as a result of the fact that the judgment entry of conviction does not state that P.R.C. is mandatory.  Thus, Petitioner's sentence is void, as a matter of state law; which violates a substantive and procedural right, as guaranteed by the 14th Amendment to the United States Constitution.

**Supporting Facts**: Petitioner's sentencing/judgment entry of conviction does not state that as part of the sentence imposed; that a term of 3-years of P.R.C. is mandatory.  The entry merely states that P.R.C. is "possible."  Under existing Ohio Supreme Court case law, hold that, in cases where the judgment entry fails to include mandatory P.R.C., amounts to a "void" judgment.  *See, generally, State*

> *v. Simpkins,* (2008), 117 Ohio St.3d 420, and its progeny.  Accordingly, the writ
> of habeas corpus will order a void sentence to be vacated, even in the absence of
> exhausting this claim in the state court's, because common law power to issue the
> writ of habeas corpus still exists; which wasn't superceded by statute.

(Doc. No. 1.)

### III.  Exhaustion and Procedural Default

#### A.        Exhaustion Standard

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b),(c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  However, if relief is no longer available in state court, exhaustion can be rendered moot:  "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts."  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001).

#### B.        Procedural Default Standard

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).  A claim may become procedurally defaulted in two ways.  *Id*.  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[4]  *Id.*

---

[4]  In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted.  785 F.2d at 135.  Under this test, the Court decides (1) whether

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted.  *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).  This second type of procedural default is often confused with exhaustion.  Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition."  *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id*.  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id*.  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id*.

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law."  *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts

_____

the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice."  *Id*. at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

11

well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.* Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991). Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *see Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio 2007).

## IV.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Parker v. Matthews,* 567 U.S. –, 2012 WL 2076341, *6 (U.S. Jun. 11, 2012); *Renico v Lett,* 559 U.S. –, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002))  The Supreme Court has indicated, however, that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker*, 2012 WL 2076341, *6; *Howes v. Walker,* – S.Ct. –, 2012 WL 508160 (U.S. Jun. 11, 2012).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006)

13

(*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, —— U.S. ——, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id*. at 786 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 785. The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id*. (internal quotation marks omitted). Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786–87. This is a very high standard, which the Court readily acknowledges. *See id*. at 786 ("If this standard is difficult to meet, that is because it is meant to be.").

## V. Ineffective Assistance of Counsel

### A. Ineffective Assistance of Trial Counsel

To establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington,* 466 U.S. 668 (1984); *United States v. Bavers*, 787 F.2d 1022 (6th Cir. 1985). A petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair. *Id*. To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d

14

222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy. *Id*. at 689; *see also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

### B. Ineffective Assistance of Appellate Counsel

To prove ineffective assistance of appellate counsel, the claimant must show a level of deficient performance that is prejudicial to the defendant under *Strickland*. *See Ratliff v. United States*, 999 F.2d 1023, 1026 (6th Cir. 1993). Counsel must provide reasonable professional judgment in presenting the appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396–97, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986), *quoting Jones v. Barnes*, 463 U.S. 745, 751–52, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Failure to raise "significant and obvious" issues on appeal can constitute ineffective assistance of appellate counsel. *Mapes v. Coyle*, 171 F.3d 408 (6th Cir. 1999). "[No] decision of this Court suggests ... that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. at 750–54; *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990) (tactical choices are properly left to the sound professional judgment of counsel). Of course, not every decision made by appellate counsel can be insulated from review merely by categorizing it as strategic. The Sixth Circuit has identified the following factors to be considered in determining whether counsel on direct appeal performed competently:

A. Were the omitted issues "significant and obvious?"

B. Was there arguably contrary authority on the omitted issues?

15

C. Were the omitted issues clearly stronger than those presented?

D. Were the omitted issues objected to at trial?

E. Were the trial court's rulings subject to deference on appeal?

F. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

G. What was appellate counsel's level of experience and expertise?

H. Did the petitioner and appellate counsel meet and go over possible issues?

I. Is there evidence that counsel reviewed all the facts?

J. Were the omitted issues dealt with in other assignments of error?

K. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427–28 (6th Cir. 1999). This list is not exhaustive and need not

produce a certain "score." *Id.* at 428. Lastly, failure of appellate counsel "to raise an issue on

appeal is ineffective assistance only if there is a reasonable probability that inclusion of the issue

would have changed the result of the appeal." *Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir.

2005), *citing Greer v. Mitchell*, 264 F.3d 663 (6th Cir. 2001).

## VI.  Analysis

Respondent contends that grounds one and six, as well as a portion of ground five, are

procedurally defaulted and that the remaining claims are without merit.  (Doc. No. 18. at 21-33).

### A.  Ground One

Mobley asserts there was insufficient evidence presented to the jury in order to convict him

of the illegal manufacture or assembly of drugs.  In February, 2009, Mobley raised the

insufficient evidence claim to the state appellate court, but did not timely appeal the adverse

decision to the Ohio Supreme Court.  In August, 2011, Mobley filed a motion for a delayed

appeal in the Ohio Supreme Court, attempting to raise the sufficiency claim, and asserting that

the reasons for the delay were that he was "semi-literate," and ignorant of the law and

procedures, as well as the fact that neither counsel nor the state appellate court informed him of

16

the October 13, 2009 decision. In an unexplained entry, the Ohio Supreme Court denied the motion. (Doc. No. 18-1, Exh. 25.) Respondent contends that such an entry is considered a procedural ruling sufficient to bar habeas review. *See Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004) (*per curiam*), *cert. denied*, 543 U.S. 989 (2004).

Under the state procedural mechanism, the Ohio Supreme Court has jurisdiction over timely appeals which are made within 45 days of the state appellate court's decision. *See* Ohio S.Ct.Prac.R. II § 2(A)(1). The Ohio Supreme Court may in its discretion take jurisdiction over untimely felony appeals upon motion for leave to file a delayed appeal pursuant to Ohio S.Ct.Prac.R. II § 2(A)(4)(a). However, where the Ohio Supreme Court does not allow the delayed appeal, the *Bonilla* Court held that the unexplained state court decision denying leave to file an untimely appeal is presumed to enforce any applicable procedural bar. *See Bonilla* at 497; *Smith v. State of Ohio Dept. of Rehab. and Corr.*, 463 F.3d 426, 431-432 (6th Cir. 2006). Denial of an Ohio S.Ct.Prac.R. II § 2(A)(4)(a) motion for leave to file a delayed appeal is not a ruling on any claim included with such motion, and has been determined to be an "adequate and independent" basis for procedural default consistent with *Maupin v. Smith*, which can foreclose federal habeas review. *See Bonilla* at 497; *Smith*, 463 F.3d at 431-432. Applying this law, Mobley's first ground for relief is defaulted unless he can demonstrate cause and prejudice or actual innocence to overcome the default.

Mobley contends that he is "semi-literate" and ignorant of the law and court procedures. (Doc. 20 at 2.) Federal habeas courts, however, have determined that "lack of education, youth and illiteracy, *inter alia*, may not constitute cause for a procedural default because it fails to qualify as an external impediment to the defense." *Reaster v. Konteh*, 2008 WL 3306726, *12 (N.D. Ohio Aug. 7, 2008); *Sudberry v. Voorhies*, 2008 WL 1905262 *9, fn. 9 (S.D. Ohio Apr. 29, 2008) (*citing Harris v. McAdory*, 334 F.3d 665, 668-669 (7th Cir. 2003) *cert. denied*, 124 S.Ct. 2022 (2004)).

Mobley further contends that counsel did not provide him with the state appellate court's decision. *Smith* is analogous. In *Smith*, counsel neglected to inform the petitioner of the

17

decision of the Ohio Court of Appeals on direct appeal, impeding the petitioner's opportunity for a further timely appeal to the Ohio Supreme Court. *Id.* at 432. The *Smith* Court held that counsel's failure to inform the petitioner of the state appellate decision amounted to cause with respect to his procedural default in the Ohio Supreme Court, despite the fact that the appeal to the Supreme Court was discretionary and no constitutional right to counsel attached, because notification of the state appellate decision was part of appellate counsel's duties in representing his client during the first appeal of right. *Id.* at 433. ("The court's ultimate decision regarding a particular legal proceeding is part of that legal proceeding, and appointed counsel's duties in representing a client during that legal proceeding include the duty of informing her client of the outcome of the proceeding.").

The *Smith* Court also provides guidance on the prejudice prong as follows:

Because it is presumed that the assistance of counsel is necessary for a reliable adversary process, if the defendant is denied counsel on appeal, the appeal is deemed unfair without requiring any particular demonstration of prejudice. *Id.* at 483-84, 120 S.Ct. 1029. When, as here, a defendant alleges that his counsel's ineffective assistance led "to the forfeiture of a proceeding itself" by denying him the opportunity to appeal and thus to the appeal proceeding itself, prejudice is presumed. *Id.* at 483, 120 S.Ct. 1029. For this presumption to apply, however, the defendant must demonstrate that counsel's deficient performance "actually cause[d] the forfeiture of the defendant's appeal." *Id.* at 484, 120 S.Ct. 1029. In *Roe v. Flores-Ortega*, the Supreme Court held that a defendant claiming that his counsel's failure to consult with him regarding taking an appeal was entitled to the presumption of prejudice if he could "demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* In determining whether the deficient performance of Smith's counsel caused the forfeiture of Smith's appeal, we apply a modified version of the standard set forth in *Flores-Ortega*: "that there is a reasonable probability that, but for counsel's deficient failure to notify Smith of the Ohio Court of Appeals decision, Smith "would have timely appealed" to the Ohio Supreme Court. *Id.* "Evidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination ." *Id.* at 485, 120 S.Ct. 1029.

In assessing whether a defendant such as Smith "would have timely appealed," by considering whether the defendant "promptly expressed a desire to appeal," we apply a rebuttable presumption that if the period of time between when the defendant learned of the decision and when he or she attempted to appeal the decision is greater than the period allotted by state law for the timely filing of an appeal-here, forty-five days-the defendant fails to demonstrate that he or she "would have timely appealed" the decision but for the counsel's deficient failure to notify the defendant of the decision. In the absence of other circumstances hindering the defendant's ability to attempt to appeal the decision within this time frame, allowing a greater amount of time would generally bestow a windfall upon the defendant whose counsel promptly

18

failed to notify the defendant of a decision.

*Id*. at 435-436.

Applying *Smith* to Mobley's assertion that he did not receive notice of the decision of the Ohio Court of Appeals until December 26, 2009, Mobley's argument fails. He did not take action to appeal until August 16, 2011, approximately twenty months after learning of the decision, well beyond the forty-five day limit allowed under Ohio Supreme Court Rule II § 2(A)(1)(a). As such, Mobley is unable to demonstrate that he would have timely appealed the decision, but for counsel's failure to notify.

Mobley also asserts that the state appellate court should have notified him of the decision, but failed to do so The docket sheet indicates that the clerk provided copies of the decision to Mobley's counsel, as required by Ohio App. R. 30. (Doc. No. 8-1, Exh. 19, p. 2) The rule provides:

> Immediately upon the entry of an order or judgment, the clerk shall serve by mail a notice of entry upon each party to the proceeding and shall make a note in the docket of the mailing. Service on a party represented by counsel shall be made on counsel.

As such, Mobley's argument fails.

Regarding actual innocence, Mobley claims that the evidence portrayed at trial as items found in "meth labs," are actually typical items found in "rural, low-income homes . . . where the occupants 'scrap' (collect 'junk') to make ends meet." (Doc. No. 20 at 1.) Such conclusory statements, however, are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *see Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio 2007). Mobley has not presented new reliable evidence demonstrating his innocence.

Mobley's first ground for relief would also fail on a merits review. The state appellate court, applying Ohio law relying on *Jackson v. Virginia*, 443 U.S. 307 (1979), thoroughly analyzed the evidence as follows:

> {¶ 23} In his second assignment of error, Mobley contends that his convictions for

19

illegal manufacture of drugs, illegal assembly or possession of chemicals for the manufacture of drugs, and possession of drugs were not supported by sufficient evidence. In his first assignment of error, Mobley contends that his convictions were against the manifest weight of the evidence. We disagree.

{¶ 24} When an appellate court reviews a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Monroe*, 105 Ohio St.3d 384, 392, 827 N.E.2d 285, 2005-Ohio-2282, *citing State v. Jenks* (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, superseded by state constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio-355. Sufficiency is a test of adequacy, *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 1997-Ohio-52, and the question of whether evidence is sufficient to sustain a verdict is one of law. *State v. Robinson* (1955), 162 Ohio St. 486, 124 N.E.2d 148, superseded by state constitutional amendment on other grounds as stated in *Smith, supra*.

{¶ 25} When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, *quoting State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. *Id*.

{¶ 26} Here, Mobley was convicted of one count of illegal manufacture of drugs in violation of R.C. 2925.04(A), one count of illegal assembly or possession of chemicals for the manufacture of drugs in violation of R.C. 2925.041(A), and one count of possession of drugs in violation of R.C. 2925.11(A), (C)(1)(a).

{¶ 27} R.C. 2925.04(A) provides that:

(A) No person shall knowingly cultivate marihuana or knowingly manufacture or otherwise engage in any part of the production of a controlled substance.

{¶ 28} Additionally, R.C. 2925.041(A) provides that:

(A) No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code.

{¶ 29} Finally, R.C. 2925.11(A),(C)(1)(a) provides that:

(A) No person shall knowingly obtain, possess, or use a controlled substance.

* * *

(C) Whoever violates division (A) of this section is guilty of one of the following:

(1) If the drug involved in the violation is a compound, mixture, preparation, or

substance included in schedule I or II, with the exception of marihuana, cocaine, L.S.D., heroin, and hashish, whoever violates division (A) of this section is guilty of aggravated possession of drugs. The penalty for the offense shall be determined as follows:

(a) Except as otherwise provided in division (C)(1)(b), (c), (d), or (e) of this section, aggravated possession of drugs is a felony of the fifth degree, and division (B) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender.

{¶ 30} R.C. 2925.01(K) provides that " 'possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." The Supreme Court of Ohio has held that a person has constructive possession of a thing or substance when he is able to exercise dominion or control over it. *State v. Wolery* (1976), 46 Ohio St.2d 316, 329, 348 N.E.2d 351, certiorari denied (1976), 429 U.S. 932, 97 S.Ct. 339, 50 L.Ed.2d 301. Circumstantial evidence alone is sufficient to support the element of constructive possession. *Jenks*, 61 Ohio St.3d at 272-73, 574 N.E.2d 492.

{¶ 31} Here, testimony was heard that investigators discovered in Mobley's residence items associated with methamphetamine production including a reaction vessel, a propane torch, drain opener, a ventilation fan, stripped lithium batteries, glass tubing, multiple pairs of gloves, multiple Coleman fuel cans, a scale, coffee filters, methamphetamine contained in plastic baggies, instruments used for snorting or smoking methamphetamine, multiple empty pseudoephedrine boxes, and a pan covered in a blue substance indicative of anhydrous ammonia being cooked. Additionally, testimony was heard that the only item required to produce methamphetamine that was not discovered in Mobley's residence was anhydrous ammonia, and that Mobley was apprehended while attempting to steal anhydrous ammonia the morning the search was executed. Even further, testimony was heard from Brown that only she and Mobley lived at the residence at the time the items were discovered; that Mobley paid her to purchase pseudoephedrine; that Mobley would take the pills, go into the basement, and come back with methamphetamine; that Mobley told her about things he needed to purchase to produce methamphetamine; that she had seen Mobley weigh methamphetamine on a scale; and, that Mobley used various items to cover the smell of anhydrous ammonia cooking.

{¶ 32} Finally, we note that, although Mobley, his friend, and his sister testified that they had never seen many of the items associated with methamphetamine production at the residence, that Gibson was often at the residence, and insinuated that the items may have been his, it is clear that the jury found the law enforcement officers' and Brown's testimony to be more credible. We do not find that the evidence indicated that the jury clearly lost its way, particularly given that it is in the best position to weigh witness credibility. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273.

{¶ 33} Based upon the evidence presented, we find that Mobley's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence.

*State v. Mobley,* 2009 WL 3260613, *5-7, 2009-Ohio-5434 (Ohio App. 3rd Dist. Oct. 13, 2009).

Based upon this Court's own review of the trial transcript, the state appellate court accurately summarized the evidence of record and correctly identified the applicable law. When viewing the evidence in the light most favorable to the prosecution, a reasonable juror could have found Mobley guilty. Mobley's girlfriend, Elizabeth Brown, testified to the presence of items in the residence required for methamphetamine production, to conversations she had with Mobley implicating him in such production, and to actions on his part suggesting his involvement. (Doc. Nos. 18-2 at 225-235; 18-3 at 355-360.) Additionally, Mobley was arrested while attempting to steal anyhdrous ammonia, one of the substances involved in the production of the illegal drug. (Doc. No. 18-2 at 215-219.) As such, this Court finds that the state appellate court's decision was neither contrary to, nor an unreasonable application of, clearly established federal law. Mobley's first ground for relief is, therefore, without merit.

### B. Grounds Two through Five

In grounds two through five, Mobley contends that his counsel was ineffective for several reasons. In ground two, he contends that appellate counsel failed to notify him of the state appellate court decision, which is identical to Mobley's argument as cause for his default in the Ohio Supreme Court. As previously discussed, however, this argument fails as he did not pursue his appeal to the Ohio Supreme Court within forty-five days from the time he learned of the decision, and his delayed appeal was not allowed. In addition, in Mobley's 26(B) application, the court, applying the *Strickland* analysis, declined to find ineffective assistance of appellate counsel, noting as follows:

> The Court further finds that the additional assignments of error raised in the alternative request for reopening fail to show any genuine issue as to whether Appellant was deprived of the effective assistance of counsel on appeal. App.R. 26(B)(5). *State v. Reed* (1996), 74 Ohio St.3d 534, applying the analysis of *Strickland v. Washington* (1984), 466 U.S. 668. *See, also State v. Bradley* (1989), 42 Ohio St.3d 136. Accordingly, the application is not well-taken.

(Doc. No. 8-1, Exh. 14.) The state appellate decision reasonably applied *Strickland*. Ground two is without merit.

In ground three, Mobley contends that appellate counsel was ineffective for failing to file a

22

motion for reconsideration pursuant to Ohio App.R. 26(A).  A petitioner's right to counsel, however, does not extend beyond his first appeal of right to discretionary appeals or collateral review.  *See Pennsylvania v. Finley*, 481 U.S. 551, 556 (1987).  Even if Mobley had a constitutional right to legal assistance in the 26(A) proceeding, he has not demonstrated prejudice.  The state appellate court in Mobley's 26(A) & (B) application rejected his *Strickland* claim.  Furthermore, whether to grant a 26(A) application to reconsider is discretionary.  The standard for reviewing an application for reconsideration under 26(A) is whether the application "calls to the attention of the court an obvious error in its decision, or raises an issue for consideration that was either not considered at all or was not fully considered by the court when it should have been." *Columbus v. Hodge*, 37 Ohio App.3d 68, 523 N .E.2d 515 (1987), paragraph one of the syllabus.  Similarly, "[a]n application for reconsideration is not designed for use in instances where a party simply disagrees with the conclusions reached and the logic used by an appellate court.  App.R. 26 provides a mechanism by which a party may prevent miscarriages of justice that could arise when an appellate court makes an obvious error or renders an unsupportable decision under the law." *State v. Owens*, 112 Ohio App.3d 334, 336, 678 N.E.2d 956 (1996).  As such, Mobley cannot establish that the timely filing of such an application could have caused the case to have a different outcome.  Ground three is without merit.

In ground four, Mobley asserts that his appellate counsel, who also served as his trial counsel, was ineffective because he did not raise his own ineffectiveness at trial.  Mobley raised this claim in his 26(A) & (B) application and the state appellate court, applying *Strickland*, rejected it.  Additionally, Mobley filed a state postconviction petition specifically challenging counsel's ineffectiveness for withdrawing the suppression motion, which the court addressed as follows:

> [T]he Court having reviewed the audio tape of the proceedings had on August 26, 2008, finds that the Defendant's counsel, in open court and in the presence of the Defendant, orally moved to withdraw his previously filed Motion to Suppress evidence and that the Court addressed the Defendant directly and asked the Defendant if it was satisfactory to the Defendant to withdraw said motion and the Defendant

responded in the affirmative; and,

The Court further finds that despite the Defendant's suggestion that he only recently became aware of the content of the decision of the Third District Court of Appeals, the record of the Third District Court of Appeals reflects that on January 7, 2010, the Defendant filed a *pro se* Application for Reconsideration of the Appellate Court decision.

The Court further finds that the transcript of proceedings was filed with the Third District Court of Appeals on March 11, 2009 and that the Defendant was required to file a Petition for Post Conviction Relief no later than 180 days after said date.

The Court therefore finds that the Defendant's petition fails to demonstrate that he was unavoidably prevented from discovery of the facts upon which the Defendant must rely to present his claim for relief and that the Defendant's motion for delayed Post Conviction Relief is not well taken. . . .

(Doc. No. 12-7 at 1-2.)[5]  Mobley's ground four is meritless as the state appellate court ruled that he "failed to show any genuine issue as to whether [Mobley] was deprived of the effective assistance of counsel. . . ."  (Doc. No. 8-1 at 2.)

In ground five, Mobley argues that since he was represented by the same attorney at trial and on direct appeal, he was denied effective assistance of counsel.  Specifically, he argues that appellate counsel did not raise a claim on direct appeal regarding his ineffectiveness in the withdrawal of the motion to suppress.  (Doc. No. 10 at 2.)  Respondent raises two procedural default arguments.  Respondent also asserts that under Ohio law, a petitioner who is represented on direct appeal by the same attorney as at trial has no obligation to raise ineffective assistance of trial counsel claims.  *See State v. Lentz*, 70 Ohio St.3d 527, 529, 639 N.E.2d 784 (Ohio 1994) ("since 'counsel cannot realistically be expected to argue his own incompetence, *res judicata* does not act to bar a defendant represented by the same counsel at trial and upon direct appeal from raising a claim of ineffective assistance of counsel in a petition for postconviction relief.'" (*quoting State v. Carter*, 36 Ohio Misc. 170, 304 N.E.2d 415 (Montgomery Cty. C.P. 1973))); *City of Dayton v. Hill*, 21 Ohio St.2d 125, 125, 256 N.E.2d 194 (Ohio 1970).

---

[5]Mobley filed a delayed postconviction appeal with the state appellate court, which was denied.  (Doc. No. 18-1, Exhs. 26 & 27.)  He then appealed to the Ohio Supreme Court, which dismissed the appeal as not involving any substantial constitutional question.  (Doc. No. 8, Exh. 17.)

Regarding the merits of ground five, Mobley has not presented any evidence indicating that the search warrant was defective, as he claimed in his postconviction petition.  Mobley also has not shown that the warrant was based upon false information, as he charges in the federal habeas petition.  Moreover, his claim that the warrant was issued on the basis of a "bare bone affidavit" is conclusory and does not establish lack of probable cause.  For these reasons, the Court finds that there is no reasonable possibility that trial counsel not withdrawing the suppression motion would have resulted in the exclusion of evidence and Mobley's exoneration.

Moreover, as discussed, Mobley raised this issue in a state postconviction petition and the trial court determined, upon its review of an audio tape from the August 26, 2008 proceeding, that after counsel orally moved to withdraw the motion, Mobley represented to the court that he endorsed the action.  (Doc. No. 12-7.)  Ground five is without merit.

### C.  Ground Six

In ground six, Mobley contends that his sentence is void because the court failed to include in the journal entry that post-release control was mandatory.  Respondent asserts that this ground is defaulted as Mobley failed to raise it either on direct appeal or in his 26(B) application. (Doc. No. 18 at 30-31.)  The Court finds that Mobley's ground six is defaulted.  He may no longer present his claim to the Ohio courts since it would be barred under Ohio's *res judicata* doctrine, an adequate and independent ground foreclosing habeas review.  *See Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) (as applied to direct appeals); *Johnson v. Kerns*, 2011 WL 3288396, *14 (N.D. Ohio Jul. 12, 2011), adopted, 2011 WL 3290170 (N.D. Ohio Jul. 29, 2011) (as applied to 26(B) motion).

Respondent also contends that Mobley's ground six is not cognizable in habeas review. Errors in state law that do not violate a specific constitutional right are not cognizable in habeas corpus unless they result in a proceeding that is fundamentally unfair and thus violates the due process clause.  *Walker v. Engle*, 703 F.3d 959, 962 (6th Cir. 1983), *cert. denied*, 464 U.S. 962 (1983).  A state court sentencing decision and claims arising from that decision generally do not raise a cognizable constitutional claim.  *See, e.g., Sneed v. Donahue*, 993 F.2d 1239, 1244 (6th

Cir. 1993); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Heard v. Jago*, 515 F.Supp. 162, 167 (S.D. Ohio 1980).  Whether the trial court properly described Mobley's post-release control at the sentencing hearing or in the docket entry is a matter governed by state law.  *See Arthurs v. Warden, Warren Corr. Inst.*, 2012 WL 995395, *14 (S.D. Ohio Mar. 23, 2012) (Report & Recommendation) (claim that judge failed to explain at sentencing that post-release control was mandatory, advanced as an error of state law, is not remediable on habeas corpus review).  Mobley has not demonstrated that the trial court's alleged error in failing to specify the mandatory nature of post-release control "affected the validity of the remainder of his sentence from a federal constitutional viewpoint."  *Arthurs* at 14.

## VII. Conclusion

For the foregoing reasons, it is recommended that Mobley's Petition be denied.


s/ Greg White_____
United States Magistrate Judge


Date:   June 29, 2012


## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**